### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERICA JAMES, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | )   Case No. CIV-07-969-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
|         Defendant. | ) |

### REPORT AND RECOMMENDATION

Erica James ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter be remanded for further proceedings.

### Administrative Proceedings

Plaintiff initiated these proceedings by filing her application seeking supplemental security income payments in May, 2004, alleging that as of November, 1996, she could no longer work because of multiple ganglion cysts, numbness in her hands and arms, headaches, and bulging discs in her cervical spine [Tr. 53 - 54 and 65]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 31 - 34 and 36 - 39]; at Plaintiff's request an

Administrative Law Judge ("ALJ") conducted a hearing in September of 2006 where testimony was given by Plaintiff and a vocational expert [Tr. 23 and 308 - 344]. The ALJ then determined that Plaintiff remained able to perform her past relevant work as well as a significant number of jobs in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15 - 20]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 6 - 9], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff presents four propositions of error: (1) the ALJ erred in concluding at step two of the sequential process that Plaintiff's mental impairments were not severe, (2) the ALJ erred in the application of the treating physician rule in connection with the opinions of Dr. Delafield who diagnosed Plaintiff with rheumatoid arthritis (3) the ALJ failed to properly

assess Plaintiff's residual functional capacity[1] ("RFC"), and (4) the ALJ failed to properly evaluate Plaintiff's credibility. Reversal and remand is recommended because the ALJ's assessment of the treating physician's opinions cannot be meaningfully reviewed. As a result, it is not possible to determine whether restrictions imposed by Dr. Delafield – restrictions related to Plaintiff's hands – were properly excluded from Plaintiff's RFC. Thus, the following analysis will focus on the ALJ's decision as it pertains to Plaintiff's rheumatoid arthritis and resulting hand limitations, and Plaintiff's remaining arguments on appeal will not be addressed.

**Analysis**

At her administrative hearing, Plaintiff testified that she began to have difficulty using her hands and experienced "lots of swelling" in 1996 while working as a seal tester on computer hard drives at Seagate [Tr. 317]. She stated that she had suffered "really bad" for at least five years and had been to several doctors who were unable to help her [Tr. 324]. She first saw Dr. Delafield in August, 2006 – just prior to the administrative hearing – after having been referred by a hand specialist [Tr. 325 - 326]; Plaintiff testified that she had previously been unable to afford this treatment but that her aunt paid for these recent visits [Tr. 326]. Dr. Delafield made a definitive diagnosis of seronegative rheumatoid arthritis[2] [Tr.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945 (a)(1).

[2] Dr. Delafield explained to Plaintiff that "the most appropriate diagnosis would be seronegative rheumatoid arthritis [which] just means that you have rheumatoid arthritis and the usual positive blood tests are negative." [Tr. 281]. According to Dr. Delafield, "[a]bout 5 % of rheumatoids lack all markers." [Tr. 280].

324], advised Plaintiff that she would always have the disease, and began treatment with Mexotrexate [Tr. 319]. Plaintiff testified that her fingers, wrists and hands hurt all of the time and swelled with any activity [Tr. 328] and that she experienced difficulty in using her hands [Tr. 329].

The ALJ determined that Plaintiff was, in part, severely impaired by rheumatoid arthritis and that her RFC for sedentary work was restricted by "limited abilities to perform gross manipulation bilaterally" as well as by "some reduction in grip strength." [Tr. 17]. The ALJ's review of the medical evidence pertaining to Plaintiff's hand difficulties includes reference to records from Orthopedic Associates [ Tr. 18 and 239 - 251]. Specifically, the ALJ noted that in 1998 Plaintiff "underwent right index finger radical flexor tenosynovectomy[3] with excision of cyst and trigger finger[4] release [and that t]reatment

---

[3]Tenosynovectomy is defined as the "[e]xcision of a tendon sheath." *Stedman's Medical Dictionary* 1946 (28th ed. 2006).

[4]According to information on the public Web portal of the American Society for Surgery of the Hand,

Stenosing tenosynovitis, commonly known as "trigger finger" or "trigger thumb", involves the pulleys and tendons in the hand that bend the fingers. The tendons work like long ropes connecting the muscles of the forearm with the bones of the fingers and thumb. In the finger, the pulleys are a series of rings that form a tunnel through which the tendons must glide, much like the guides on a fishing rod through which the line (or tendon) must pass. These pulleys hold the tendons close against the bone. The tendons and the tunnel have a slick lining that allows easy gliding of the tendon through the pulleys.

Trigger finger/thumb occurs when the pulley at the base of the finger becomes too thick and constricting around the tendon, making it hard for the tendon to move freely through the pulley. Sometimes the tendon develops a nodule (knot) or swelling of its lining. Because of the increased resistance to the gliding of the tendon through the pulley, one may feel pain, popping, or a catching feeling in the finger or thumb. The catching or triggering action is distinctive[.] When the tendon catches, it produces inflammation and more swelling. This causes a vicious cycle of triggering, inflammation, and swelling. Sometimes the finger becomes stuck or locked, and is hard to straighten or bend.

records suggest residual pain and swelling and mild residual carpal tunnel syndrome." [Tr. 18 and 243].  On examination in April 2004, Henry Co, M.D., noted "multiple cystic lesions over both hands with swelling and limitation of finger joints." [Tr. 18 and 170].[5]  James Metcalf, M.D., performed a consultative examination of Plaintiff in August, 2004 and assessed both arthritis and bilateral multiple ganglion cysts of the wrists and fingers [Tr. 18 and 176 - 182].  The ALJ stated that, "Dr. Metcalf commented the claimant's grip is less than adequate although her hand and finger dexterity was good." [Tr. 18].  More specifically, Dr. Metcalf noted that

> Both wrists have limited range of motion.  There are multiple ganglion cysts on the right wrist with the largest being 3 x 5 cm.  There are also several ganglion cysts in the joints of the fingers.  There is swelling of the MPJs[6] and the PIPJS[7] and they are quite tender to palpation.  The fingers do have a normal range of motion.
>
> The left wrist likewise has multiple ganglion cysts with the largest being about 3 cm in diameter.  There is swelling of the PIPJS of the fingers which are tender.  There is limited range of motion of the wrist.  There is a 2/5 grip in each hand which is less than adequate.

[Tr. 177 - 178].

---

http://www.assh.org  (internal references omitted).

   [5]After another examination earlier that month, Dr. Co diagnosed Plaintiff with "[m]ultiple ganglion cysts of both hands with arthritis involving both hands with question of inflammatory [sic] causing marked disability and inability to work." [Tr. 175].

   [6]The undersigned presumes that Dr. Metcalf was utilizing an abbreviation for metacarpophalangeal joint.  The term metacarpophalangeal denotes the articulations between the metacarpus – "[t]he five bones of the hand between the carpus and the phalanges" – and the phalanges. *Stedman's Medical Dictionary* 1193 (28th ed. 2006). The "carpus" is the wrist, *id.* at 318, and "phalanges" are the bones of the digits. *Id.* at 1471.

   [7]Likewise, the undersigned presumes that "PIPJS" is Dr. Metcalf's abbreviation for proximal – "nearest," *Stedman's Medical Dictionary* 1586 (28th ed. 2006) – interphalangeal – finger joints. *Id.* at 990.

As noted in the ALJ's decision, in June of 2006 Plaintiff saw Carlos A. Garcia-Moral, M.D., who "concluded the claimant's clinical picture is consistent with rheumatoid arthritis." [Tr. 19]. More specifically, Dr. Garcia-Moral found the following on physical examination:

> Positive physical findings show that on the dorsal aspect of the left wrist there is an extensive area of extensor tenosynovitis. She has proximal interphalangeal joint synovitis,[8] more prominent in the index and ring fingers. She has flexor tenosynovitis in the volar aspect of her hand. This is consistent with rheumatoid arthritis. The synovitis on the dorsal aspect of the wrist is estimated to be about 6 to 7 cm in length by about 3 cm in width.
>
> On the right hand she has synovitis at the proximal interphalangeal joints.
>
> She states that there has been tests that came up with a negative serum test. It is not unusual to have seronegative rheumatoid arthritis.
>
> . . . X-rays were obtained that show very typical changes of periarticular osteopenia in the metacarpal and proximal interphalangeal joints of all of the fingers in both hands.
>
> In summary, this patient has a clinical picture consistent with rheumatoid arthritis.

[Tr. 254]. Dr. Garcia-Moral further stated that Plaintiff should be seen by a rheumatologist. *Id.*

Plaintiff was then seen in August 2006 by one of the rheumatologists recommended by Dr. Garcia-Moral, Frederick Delafield, M.D. [Tr. 19, 280 and 282]. Because it is Dr. Delafield's opinions of Plaintiff's functional limitations which are at issue in this appeal, the ALJ's complete discussion of those opinions follows:

---

[8]Synovitis is defined as "[i]nflammation of a synovial membrane, especially that of a joint." *Stedman's Medical Dictionary* 1920 (28th ed. 2006).

> Frederick C. Delafield, M.D., based a diagnosis of seronegative rheumatoid arthritis on laboratory testing and obvious inflammation. Lab results showed normal chemistry profile. SED rate, rheumatoid factor, anti-CCP antibody, and ANA were all negative. Methotrexate was prescribed. In October 2006, Dr. Delafield opined the claimant has rheumatoid arthritis with joint pain and swelling. He also noted reduced hand joint range of motion as well as joint warmth, deformity, and instability. Reduced grip strength and redness were reported. Dr. Delafield also reported depression with moderate limitations in the claimant's abilities to handle work stress. He opined the claimant could sit 30 minutes at a time for a total of 1 hour; walk ½ block; stand 15 minutes at a time for a total of 1 hour; and, sit, stand, and walk less than a total of 2 hours in an 8 hour work day. He also reported the claimant needed rest and the ability to change positions. Dr. Delafield opined the claimant could never lift and carry in a competitive work situation and that she would have significant limitations in repetitive reaching, handling, and fingering. He concluded the claimant could use her hands, fingers, and arms for grasping, turning, or twisting object; finely manipulating; and reaching 0 % of the time. Dr. Delafield opined the claimant could bend and twist at the waist 0 % of the time. Dr. Delafield's opinions are not entirely consistent with his treatment records or the remainder of the evidence. Certainly, there are limitations in hand use and grip strength; however, the medical evidence simply does not support Dr. Delafield's opinions regarding the claimant's abilities to sit, stand, walk, lift, or carry. Furthermore, Dr. Delafield commented on the effects of depression which are not support [sic] by the evidence of record.
>
> * * *
>
> As for the opinion evidence, the opinions rendered at the state agency level appear more consistent with the evidence of record than the opinions rendered by Dr. Delafield with the exception of the limitations on hand use. The state agency consultants did not address the limitations in hand use which should have been given the claimant's history of hand injury and surgery. The undersigned keeps in mind the diagnosis of rheumatoid arthritis [sic] rendered after the state agency opinion. Furthermore, rheumatoid arthritis was diagnosed in 2006 and has not yet satisfied the duration requirement.

[Tr. 19 (record references omitted)].

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,*

373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not

the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id.*; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

Here, the ALJ failed to address the threshold question prescribed by SSR 96-2p, 1996 WL 374188, at *2 – whether Dr. Delafield's opinions were well-supported by medically acceptable techniques – see *Watkins,* 350 F.3d at 1300, but found instead that Dr. Delafield's "opinions are not entirely consistent with his treatment records or the remainder of the evidence." [Tr. 19]. Thus, the ALJ's decision implicitly determines that Dr. Delafield's opinions are not entitled to controlling weight. As to what weight the ALJ did accord the opinions or whether he rejected them completely, the decision clearly rejects "Dr. Delafield's opinions regarding the claimant's abilities to sit, stand, walk, lift, or carry." *Id.* Moreover, it is clear the ALJ did not accept Dr. Delafield's opinion of the impact of Plaintiff's depression. *Id.*

With regard, however, to what the ALJ terms "the limitations on hand use," the decision is ambiguous at best. The ALJ acknowledges that the other opinion evidence of record – the Physical Residual Functional Capacity Assessment prepared by a State agency consultant [Tr. 200 - 207] – does not address limitations in hand use[9] despite Plaintiff's

---

[9]The state agency RFC Assessment specifically finds that no manipulative limitations have been established [Tr. 203].

history of hand injury and surgery [Tr. 19]. And, although he finds the state agency opinions *generally* "more consistent with the evidence of record than the opinions of Dr. Delafield," *id.*, he specifically excepts Dr. Delafield's opinions on "the limitations on hand use" from this determination. *Id.* This is consistent with his previous determination that "[c]ertainly, there are limitations in hand use and grip strength." *Id.* Nonetheless, despite his seeming acceptance of Dr. Delafield's opinions on hand use limitations and despite having specifically rejected Dr. Delafield's opinions *only* with regard to Plaintiff's depression and her ability to sit, stand, walk, lift, or carry, the ALJ did not incorporate *all* of Dr. Delafield's hand use restrictions[10] in formulating Plaintiff's RFC. Without adequate explanation, this is error. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). Moreover, if the ALJ intended to reject Dr. Delafield's opinions in their entirety for the reason that they "are not entirely consistent with his treatment records or the remainder of the evidence," *id.,* not only is his decision ambiguous on the point but he fails to provide any specific – and reviewable – rationale for such a conclusion. *See Watkins,* 350 F.3d at 1300. In other words, the ALJ simply concludes that Dr. Delafield's opinions are inconsistent with his treatment notes and with other evidence; he fails to detail any specific instances of inconsistency for subsequent review. Accordingly, remand is required for further proceedings.

---

[10]For example, Dr. Delafield opined that Plaintiff was completely restricted from using her hands to grasp, turn or twist objects [Tr. 293].

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by June 19, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 30th day of May, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE